## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

DAVID C. MAYHEW,          )
                                )
        **Plaintiff,**          )
                                )
**v.**                           )        **Civil Action No. 5:17-02666**
                                )
**D.L. YOUNG, *et al.*,**        )
                                )
        **Defendants.**       )

### AMENDED PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Plaintiff's "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief" (Document No. 3), filed on May 2, 2017; and (2) Defendants' Motion for Summary Judgment (Document No. 31), filed on September 28, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 33.) Plaintiff, however, failed to file a Response. By Proposed Findings and Recommendation entered on December 11, 2017, the undersigned recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief" be denied. (Document No. 35.) On December 19, 2017, and December 26, 2017, Plaintiff filed Motions for Reconsideration. (Document Nos. 36 and 37.) In his Motions, Plaintiff stated that he never received a copy of Defendants' Motion for Summary Judgment, requested that this Court allow him to file a Response, and then reconsider Defendants' Motion for Summary Judgment. (Id.) By Order entered

1

on January 2, 2018, the undersigned granted Plaintiff's Motions and directed Plaintiff to file his Response to Defendants' Motion for Summary Judgment. (Document No. 38.) On February 5, 2018, Plaintiff filed his Response to Defendants' Motion for Summary Judgment. (Document No. 41.) Having reconsidered, the undersigned has concluded that Plaintiff's "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief" (Document No. 3) should be denied and Defendants' above Motion for Summary Judgment (Document No. 31) should be granted.

## FACTUAL AND PROCEDURAL HISTORY

On May 2, 2017, Plaintiff filed his Complaint in this matter for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 2.) Plaintiff names the following as Defendants: (1) D. L. Young, Warden of FCI Beckley; and (2) W. Pistory, Counselor at FCI Beckley. (Id.) Plaintiff alleges that on March 21, 2017, Defendant Pistory physically assaulted Plaintiff in violation of his Eighth Amendment rights. (Id.) Plaintiff appears to allege that Defendant Pistory used physical force to throw Plaintiff to the ground without just cause. (Id.) Plaintiff complains that Defendant Pistory then "violated Plaintiff's Fifth Amendment rights when he purposefully, willfully and deliberately authored a false incident report in his premeditated and calculated efforts to rationalize, excuse and legitimatize his unlawful actions." (Id.) Plaintiff alleges that the foregoing resulted sanctions and in his placement in the Special Housing Unit ["SHU"]. (Id.) Plaintiff states that he was denied access to his high blood

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

pressure medication during his placement in the SHU, which caused him to suffer "excruciating headaches." (Id.) Plaintiff further states that he was denied contact with his attorney concerning his direct appeal, which violated Plaintiff's Sixth Amendment rights. (Id.) Finally, Plaintiff alleges that he was denied due process in violation of the Fifth Amendment concerning disciplinary actions taken against him. (Id.) Plaintiff alleges Defendant Young was aware of the foregoing constitutional violations and failed to protect Plaintiff from such violations. (Id.) Plaintiff requests monetary damages and declaratory and injunctive relief. (Id., pp. 7 – 9.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Request for Administrative Remedy" dated March 29, 2017 (Document No. 2-1, pp. 2 - 3.); (2) A copy of Plaintiff's TRULINCS e-mail communication to Warden Young dated March 30, 2017, regarding his "Request to Staff" requesting that evidence be obtain and reviewed regarding his Incident Report (Id., p. 5.); (3) A copy of Plaintiff's TRULINCS e-mail communication to Warden Young dated March 30, 2017, regarding a statement made by Officer Tunstalle (Id., p. 6.); (4) A copy of Plaintiff's TRULINCS e-mail communication to Warden Young dated March 30, 2017, regarding a statement made by Officer James (Id., p. 7.); (5) A copy of Plaintiff's TRULINCS e-mail communication to Warden Young dated March 29, 2017, complaining that the UDC did not conduct an adequate investigation (Id., pp. 14 and 17.); (6) A copy of a Statement from Inmate Deangelo Derrick (Id., p. 8.); (7) A copy of a Statement from Inmate Merle Adams (Id., p. 9.); (8) A copy of a Statement from Inmate Terron Michaux (Id., p. 10.); (9) A copy of a Plaintiff's Statement dated March 27, 2017 (Id., pp. 11 – 12.); (10) A copy of a Plaintiff's Statement dated March 26, 2017 (Id., p. 13.); (11) A copy of Plaintiff's Incident Report dated March 21, 2017 (Id., p. 15.); (12) A copy of Plaintiff's Incident Report dated March 22, 2017 (Id., p. 18.); (13) ) A copy of Plaintiff's TRULINCS e-mail communication to the Warden dated April 2, 2017, regarding his

"Request to Staff" that BOP policies be followed during disciplinary hearings (Id., p. 19.); and (15) A copy of a Statement by Officers at FCI Beckely (Id., p. 20.)

On the same day, Plaintiff filed a "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief." (Document No. 3.) In his Motion, Plaintiff appears to be requesting an order from the Court requiring Defendants to expunge the incident report, disciplinary conviction, and the imposed sanctions (loss of telephone and e-mail privileges for 60 days). (Id. and Document No. 2, p. 8.)

On June 1, 2017, Plaintiff filed his "Motion Seeking to Amend Originally Filed Civil Rights Complaint Under Section 1983 to be Construed, Interpreted and Decided Against Federal Officers and Employees Under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)." (Document No. 13.) By Order entered on June 5, 2017, the undersigned granted Plaintiff's above Motion. (Document No. 17.)

By Order entered on July 17, 2017, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 18.) Plaintiff paid his initial partial payment of the filing fee on July 31, 2017, and the Clerk issued process on the same day. (Document Nos. 31 and 32.) On September 28, 2017, the Defendants filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 31 and 32.) Defendants argue that Plaintiff's claims should be dismissed because "Plaintiff failed to exhaust administrative remedies" (Document No. 32, pp. 4 – 9.) As Exhibits, Defendants attach the following: (1) Declaration of Sharon Wahl (Document No. 31, pp. 3 – 4.); (2) A copy of Plaintiff's Administrative Remedy History through May 2, 2017 (Id., pp. 6 – 7.); (3) A copy of Plaintiff's Inmate Quarters History (Id., p. 9.); (4) Declaration of William Pistory (Id., pp. 10 – 11.); (5) A copy of the Incident

Report dated March 22, 2017, charging Plaintiff with Refusing to Obey an Order (Id., pp. 13 – 14.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 28, 2017, advising him of the right to file a response to Defendants' Motion for Summary Judgment. (Document No. 33.) Plaintiff, however, has failed to file a Response to Defendants' Motion for Summary Judgment. By Proposed Findings and Recommendation entered on December 11, 2017, the undersigned recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief" be denied. (Document No. 35.)

On December 19, 2017, and December 26, 2017, Plaintiff filed Motions for Reconsideration. (Document Nos. 36 and 37.) In his Motions, Plaintiff requests that this Court reconsider the Proposed Findings and Recommendation (Document No. 35) entered on December 11, 2017, recommending that Defendants' Motion for Summary Judgment be granted. (Id.) In support, Plaintiff states that he never received a copy of Defendants' Motion for Summary Judgment. (Id.) Therefore, Plaintiff requests that this Court allow him to file a Response and reconsider Defendants' Motion for Summary Judgment. (Id.

By Order entered on January 2, 2018, the undersigned granted Plaintiff's Motions and directed Plaintiff to file his Response to Defendants' Motion for Summary Judgment. (Document No. 38.) On February 5, 2018, Plaintiff filed his Response arguing that he had properly stated a claim against Defendants. (Document No. 41.) First, Plaintiff states that Defendant Pistory's Declaration is "completely and utterly false." (Id., p. 2.) Plaintiff contends that he was in a stationary and squatting position, when Defendant Young hit Plaintiff in the upper body. (Id., pp. 2, 5 – 8, 11.) Thus, Plaintiff states that he has properly alleged an excessive force claim under the

5

Eighth Amendment. (Id., pp. 3 – 4.) Second, Plaintiff states that he exhausted all available administrative remedies. (Id., pp. 4 – 5.) Third, Plaintiff complains that Defendants' conduct caused Plaintiff to be placed in SHU or the "hole." (Id., p. 5.) Plaintiff complains that his placement in SHU resulted in the loss of phone and e-mail privileges and his cell in SHU was "filthy." (Id.) Fourth, Plaintiff disputes that he did not request medical attention. (Id., p. 6.) Plaintiff states that he requested and was denied his high blood pressure medication for two days, which resulted in an excruciating headache. (Id.) Finally, Plaintiff argues that Defendants are not entitled to immunity. (Id., pp. 8 – 9.) As relief, Plaintiff requests that the Court direct the BOP to remove the false incident report from his record as it is impeding his ability to be transferred to a facility closer to his family. (Id., p. 10.)

As Exhibits, Plaintiff attaches the following: (1) A copy of an Affidavit from Inmate Merle Adams stating that Plaintiff was "on the ground" and "was not put on the ground by a staff member" (Id., p. 14.); (2) A copy of an Affidavit from Inmate Boyd Clark stating that Counselor Pistory hit and "tackled" Plaintiff to the ground while Plaintiff was properly kneeling in front of the chapel (Id., pp. 15 – 16.); (3) A copy of an Affidavit Mr. Tunstalle, an ACE coordinator at FCI Beckley, stating that when he responded to the institutional alarm he observed Plaintiff, who had mud stains on his knees, standing by the wall with Counselor Pistory (Id., p. 17.); (4) A copy of Plaintiff's Affidavit stating that Counselor Pistory grabbed him in a violent manner and tackled him to the ground without just cause (Id., pp. 18 – 21.); (5) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated April 27, 2017 and stamped received on May 23, 2017 by Bureau of Prisons MARO Regional Counsel (Remedy ID No. 897557-R1) (Id., p. 23 – 28.); (6) A copy of a "Rejection Notice" dated May 23, 2017, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office (Remedy ID No. 897557-R1) (Id., p. 28.); (7) A copy of

Plaintiff's "Central Office Administrative Remedy Appeal" dated June 14, 2017 and stamped received by the BOP Administrative Remedy Sector on June 26, 2017 (Remedy ID No. 897557-A1) (Id., p. 29.); (8) A copy of a "Rejection Notice" dated July 10, 2017 from the Central Office Administrative Remedy Coordinator (Remedy ID No. 897557-A1) (Id., p. 30.); (9) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated July 12, 2017 and stamped received on August 9, 2017, by Bureau of Prisons MARO Regional Counsel (Remedy ID No. 897557-R2) (Id., pp. 31 - 32.); and (10) A copy of a "Rejection Notice" dated August 9, 2017, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office (Remedy ID No. 897557-R2) (Id., p. 33.).

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.    Failure to Exhaust:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an

Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S.

294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against

the United States, federal agencies, or public officials acting in their official capacities. See FDIC

v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce,

933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates

exhaust available administrative remedies prior to filing civil actions though the administrative

process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v.

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S.

516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion

requirement applies to all inmate suits about prison life whether they involve general

circumstances or particular episodes and whether they allege excessive force or some other

wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under

42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison

---

and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the

10

claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4ᵗʰ Cir. 2005), *abrogated on other grounds by* <u>Custis v. Davis</u>, 851 F.3d 358 (4ᵗʰ Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had

available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve

her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

    In Defendants' Motion, Defendants argues that Plaintiff failed to exhaust his administrative

remedies as required by law. In support, Defendants submit the Declaration of Ms. Sharon Wahl,

a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 31, pp. 3 - 7.) Ms.

Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system

containing, among other things, information about inmates' administrative remedy filings. (Id., p.

3.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's

custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration:

> 4. Plaintiff filed one administrative remedy with the BOP prior to filing this Complaint, and that was at the first level of the formal administrative remedy process, the Institutional Level. Specifically, Plaintiff filed Administrative Remedy ID No. 897557-F1 at the Institutional Level on April 5, 2017. Plaintiff was challenging his disciplinary action related to this claim. That remedy was denied on April 13, 2017.

> 5. At the time of the filing of this Complaint on May 2, 2017, Plaintiff had not submitted any additional remedies or appeals.

* * *

> 8. Plaintiff only remained in the Special Housing Unit ("Z" range) for 1 day.

(Id., pp. 3 - 4.) As Exhibits, Defendants also attach a copy of Plaintiff's Administrative Remedy

History through May 2, 2017. (Id., pp. 6 – 7.) The foregoing further reveals that Plaintiff failed to

fully exhaust his administrative remedies prior to filing his Complaint. (Id.)

In Response, Plaintiff states that he exhausted all available administrative remedies.

(Document No. 41, pp. 4 – 5.) Plaintiff explains that he was ultimately unable to fully exhaust his

administrative remedies because negligence of BOP staff resulted in untimely delivery of the

Warden's denial of his BP-9. (Id.) Plaintiff states that his BP-9 was denied on April 13, 2017, but

BOP staff did not provide Plaintiff with the BP-9 Response until April 19, 2017. (Id., p. 4.) Next,

Plaintiff states that he completed and dated his BP-10 on April 27, 2017, but such was not received

14

by the Regional Director's Office until May 23, 2017. (Id.) Plaintiff contends that his BP-10 was determined to be untimely. (Id.) Plaintiff, however, argues that such untimely was not the "fault of the plaintiff." (Id.) Plaintiff concludes that the administrative remedy process was rendered unavailable because Plaintiff could not timely exhaust his administrative remedies "[d]ue to the negligence of staff." (Id.) Finally, Plaintiff states that he attempted to contact the officer who delivered the late BP-9 Response, but he was unable to make contact. (Id., p. 10.) Specifically, Plaintiff states that his Case Manager informed Plaintiff that the officer that delivered the BP-9 was re-assigned to the mailroom. (Id.) Plaintiff contends that he went by the mailroom "several times and was told that the officer did not work there." (Id.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to exhaust all available administrative remedies prior to filing his Complaint. On March 28, 2017, Plaintiff prepared an "Administrative Remedy Request" (BP-9). (Document No. 2-1, p. 2.) The record indicates that Plaintiff's Administrate Remedy Request (BP-9) was filed on April 5, 2017 and was denied on April 13, 2017. (Document No. 31, p. 3 and Document No. 41, p. 4.) Plaintiff contends that BOP staff did not provide Plaintiff with the Warden's Response denying his BP-9 until April 19, 2017. (Document No. 41, pp. 4, 22.) The following day, on April 20, 2017, Plaintiff prepared his Complaint. (Document No. 2.) On April 27, 2017, Plaintiff prepared his "Regional Administrative Remedy Appeal" (BP-10) (Remedy ID No. 897557-R1). (Document No. 41, pp. 23 – 28.) On May 2, 2017, the Court received and filed Plaintiff's Complaint dated April 20, 2017. (Document No. 2.) On May 23, 2017, Plaintiff's "Administrative Remedy Appeal" (BP-10) was stamped as received by Bureau of Prisons MARO Regional Counsel. (Document No. 41, pp. 23 – 28.) On the same day (May 23, 2017), Plaintiff's "Administrative Remedy Appeal" was rejected

by the Administrative Remedy Coordinator for the Mid-Atlantic Regional Office. (Id., p. 28.) The

Mid-Atlantic Regional Office rejected Plaintiff's regional appeal based upon the following:

> (1)     You may only submit one continuation page, equiv. of one letter-size (8.5
>         x 11) paper. Text on one side. The text must be legible.
>
> (2)     Your appeal is untimely. Regional appeals (BP-10) must be received within
>         20 days of the Warden/CCM Response or Receipt of the DHO Report. This
>         time includes mail time.
>
> (3)     Provide staff verification stating reason untimely filing was not your fault.

(Id.) Plaintiff states that the above Rejection Notice was provided to him on June 5, 2017, at

approximately 11:45 a.m. by J. Ballard's secretary.[4](Id.)

Instead of resubmitting his "Regional Administrative Remedy Appeal," Plaintiff submitted

his "Central Office Administrative Remedy Appeal" (BP-11) dated June 14, 2017 and stamped

received by the BOP Administrative Remedy Sector on June 26, 2017 (Remedy ID No. 897557-

A1). (Id., p. 29.) In his "Central Office Administrative Remedy Appeal," Plaintiff claimed his BP-

10 was timely and "the BP-9 was given to [him] by Officer Martin on the date and time provided

on the cover sheet." (Id.) Plaintiff explained that he requested Case Manager Ray to provide him

with verification of the date, but he was advised that Officer Martin would return on Monday and

such a verification could be obtain from him. (Id.) Plaintiff explained that Officer Martin never

returned and has since been transferred. (Id.) On July 10, 2017, the Central Office Administrative

Remedy Coordinator rejected Plaintiff's "Central Office Administrative Remedy Appeal" (BP-

11). (Id., p. 30.) The Central Office rejected Plaintiff's appeal based upon the following: (1)

"Concur with rationale of Regional Office and/or institution for rejection. Follow directions

---

[4] Plaintiff states that Officer Gessard was witnessed Plaintiff's receipt of the Rejection Notice
because he "was there at the desk and working the Unit that day." (Document No. 41, p. 28.)

16

provided on prior rejection notices;" and (2) If staff provides a memo stating the late filing was

not your fault, then re-submit to the level of the original rejection." (Id.)

Plaintiff re-submitted his "Regional Administrative Remedy Appeal" (BP-10) dated July

12, 2017 and stamped received by Bureau of Prisons MARO Regional Counsel on August 9, 2017

(Remedy ID No. 897557-R2). (Id., pp. 31 - 32.) Plaintiff, however, failed to provide staff

verification stating the reason the untimely filing was not the fault of Plaintiff. (Id.) On August 9,

2017, the Mid-Atlantic Regional Office Administrative Remedy Coordinator rejected Plaintiff's

"Administrative Remedy Appeal" (BP-10). (Id., p. 33.) The Regional Office rejected Plaintiff's

appeal based upon the following:

> (1)     Your appeal is untimely. Regional Appeals (BP-10) must be received within
> 20 days of the Warden/CCM Response or Receipt of the DHO Report. This
> time includes mail time.
>
> (2)     Provide staff verification stating reason untimely filing was not your fault.

(Id.) Plaintiff claims that he attempted to contact the officer who delivered the "late" BP-9, but

was unable to make contact. (Id., p. 10.) Plaintiff explains that even though he was advised that

the officer was transferred to the mailroom, the mailroom staff advised Plaintiff that the officer

did not work in the mailroom. (Id.) Thus, Plaintiff claims that he has made a diligent effort to

obtain staff verification regarding the timeliness of the BP-10. (Id.) The undersigned, however,

notes that there is no indication that Plaintiff advised the Regional Office of such difficulties when

re-submitting his BP-10. (Id., p. 33.) The record reveals that Plaintiff's BP-10 wholly failed to

respond to the Rejection Notice's requirement for Plaintiff to "provide staff verification stating

reason untimely filing was not your fault." (Id.)

Based on the foregoing, the undersigned finds that Plaintiff failed to properly exhaust his

available administrative remedies pursuant to the PLRA. The record reveals that Plaintiff prepared his "Administrative Remedy Request" (BP-9) on March 28, 2017. Plaintiff's "Administrative Remedy Request" (BP-9) was filed at the institutional level on April 5, 2017. The Warden denied Plaintiff's "Administrative Remedy Request" on April 13, 2017. Plaintiff complains that due to negligence of BOP staff, Plaintiff did not receive the Warden's denial of his BP-9 until April 19, 2017. Plaintiff contends that the administrative remedy process was rendered unavailable due to BOP staff's "untimely" delivery of the Warden's denial of his BP-9. Pursuant to Section 542.18, the Warden must respond to an inmate's BP-9 within 20 calendar days from of the filing date of the BP-9. See 28 C.F.R. § 542.19. Even assuming Plaintiff did not receive the Warden's denial of his BP-9 until April 19, 2017, such was not untimely as the Warden's denial was still received within the 20-day response period. Assuming Plaintiff believed his BP-9 was considered filed on the date it was prepared (March 28, 2017), the lack of a timely Response from the Warden did not render the administrative process unavailable allowing Plaintiff to immediately file his Complaint with the Court. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. To the extent Plaintiff believed he was not receiving a timely BP-9 response from the Warden, Plaintiff should have considered the absence of a response as a denial and proceed to the next level by filing his BP-10 with the Regional Office. To the extent Plaintiff claims he was unable to timely appeal the Warden's Response dated April 13, 2017 because it was not received by Plaintiff until April 19, 2017, such does not establish that the administrative remedy process was rendered unavailable. Plaintiff had 20 calendar days from the date of the Warden's Response to submit his "Regional Administrative Remedy Appeal" (BP-

10). Thus, Plaintiff had until May 3, 2017 to submit his "Regional Administrative Remedy Appeal" (BP-10). Assuming Plaintiff did not receive the Warden's Response until April 19, 2017, Plaintiff had 14 days to submit his Appeal to the Regional Director (BP-10). Additionally, Plaintiff could have sought an extension of time as to the 20-day appeal period by demonstrating a valid reason for delay. See 28 C.R.F. §§ 542.15, 542.14(b). A valid reason for delay includes the following:

> [1] an extended period in transcript during which the inmate was separated from documents needed to prepare the Request or Appeal; [2] an extended period of time during which the inmate was physically incapable of preparing a Request for Appeal; [3] an unusually long period taken for informal resolution attempts; [4] indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.R.F. §542.14(b). Instead of proceeding with the administrative remedies process by preparing his "Regional Administrative Remedy Appeal" (BP-10), or seeking an extension of the 20-day appeal period, Plaintiff immediately prepared his Complaint (dated April 20, 2017) following his receipt on April 19, 2017, of the Warden's Response denying his BP-9. Although Plaintiff acknowledges that he received the Warden's Response on April 19, 2017, Plaintiff did not prepare his "Regional Administrative Remedy Appeal" (BP-10) until April 27, 2017. (Document No. 41, pp. 23 – 28.) The foregoing does not support a finding the BOP staff's late delivery of the Warden's Response rendered the administrative remedy process unavailable. The record clearly supports a finding that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint with this Court on May 2, 2017.[5] Accordingly, the undersigned recommends that Plaintiff's above claims be dismissed in view of his failure to exhaust the administrative remedies

---

[5] To the extent Plaintiff describes exhaustion efforts occurring after the filing of his Complaint (May 2, 2017), such is irrelevant. A Plaintiff must exhaust all *available* administrative remedies *prior* to filing his Complaint.

provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

2.    **Motion for Temporary Restraining Order and a Preliminary Injunction:**

In his "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief," Plaintiff appears to be requesting an order from the Court requiring Defendants to expunge the incident report, disciplinary conviction, and the sanctions imposed (loss of telephone and e-mail privileges for 60 days). (Document No. 3 and Document No. 2, p. 8.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

the balance of equities tips in his favor, and [4] that an injunction is in the public interest." <u>Winter</u> <u>v. Natural Resources Defense Council, Inc.,</u> 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added).

Based upon the foregoing, the undersigned has recommended that Plaintiff's Complaint be dismissed as to all Defendants. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## <u>AMENDED PROPOSAL AND RECOMMENDATION</u>

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion for Summary Judgment" (Document No. 31), **DENY** Plaintiff's "Motion Requesting a Temporary Restraining Order and a Preliminary Injunction Seeking Emergency Relief" (Document No. 3), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Amended Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Amended Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 14, 2018.

Omar J. Aboulhosn
United States Magistrate Judge